Barbara **CRUZ**, Plaintiff,

v.

**ECOLAB PEST ELIMINATION DIVISION, ECOLAB INC., Steven Mosh, and Henry Marcantonio, Defendants.**

No. 92 Civ. 1559 (CSH).

United States District Court, S.D. New York.

March 25, 1993.

---

Grotta, Glassman & Hoffman, New York City (Jedd Mendelson, of counsel), for defendants.

Ruth M. Liebesman, New York City, for plaintiff.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

In this action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, plaintiff Barbara Cruz complains of a discriminatory discharge and allegedly related misconduct on the part of her former corporate employer, Ecolab Inc.[1], Steven Mosh and Henry Marcantonio. Defendants move under Rules 12(b)(1) and 12(b)(6) to dismiss certain paragraphs and claims in the complaint. The individual defendants also move under Rule 12(b)(5) to dismiss the complaint as to them for insufficiency of service of process.

---

1. Defendants say in their motion papers without contradiction that the first-named defendant, "Ecolab Pest Elimination Division," does not exist as a separate corporate entity. This Opinion will refer to the corporate defendant as "Ecolab."

## BACKGROUND

According to the complaint she filed with the Equal Employment Opportunity Commission ("EEOC"), and the New York State Division of Human Rights, Barbara Cruz is an Hispanic female. The EEOC complaint alleges that she was employed by Ecolab on July 30, 1990 as an "administrative assistant." She was the only female in a department of 45 employees. Her time, attendance and work performance were satisfactory. But on March 26, 1991, Ecolab informed Cruz that she would be terminated effective April 26, 1991. Cruz alleged in her EEOC complaint:

> Respondent stated that "since my employment with him I have been unable to get a decent letter out of my typewriter." Respondent stated that this might be attributed to my language barrier.

Cruz further alleged her belief that she was being terminated "because I am a female, since I am the only female in the department, and since my native tongue has never before interfered in the performance of my duties."

In these circumstances, Cruz charged Ecolab with unlawful discrimination "by denying the equal terms, conditions and privileges of employment and terminating me because of my sex and national origin." The New York State Division of Human Rights complaint, attached to the motion papers, appears to be dated April 17, 1991.

Following her receipt from the EEOC of a right-to-sue letter, Cruz commenced her action in this Court. The complaint reiterates Cruz's claim of discriminatory discharge. The complaint also asserts claims of discrimination at the time of hiring and sexual harassment. Specifically, ¶¶ 14–21 of the complaint allege that Cruz initially applied to Ecolab for the advertised position of exterminator, but was offered instead a lesser clerical position. Cruz alleges that she was interviewed by Marcantonio, the "manager." Marcantonio told Cruz that "she should not take a job as an exterminator because women did not like rats or cockroaches," ¶ 16, and, despite Cruz's assurances that she was not afraid and was interested in the benefits offered with the position of exterminator, she was offered instead a position as an administrative assistant, for which she had not applied and had seen no advertisement. ¶¶ 17, 18. Ecolab hired Cruz on July 19, 1990 with employment to begin on July 30, as an administrative assistant. Eight to ten men were hired for the position of exterminator, none of whom, to Cruz's knowledge, had any prior experience in that field. ¶¶ 19–21.

The complaint also alleges at ¶¶ 22 through 27 that Cruz was subjected to disparaging, gender-based comments and sexual harassment during the course of her employment. Specifically, the complaint alleges that an Ecolab employee named Olsen said to plaintiff that he would leave the elevators unlocked at night "so that she might be raped." ¶ 23. That comment was made in the presence of defendant Mosh, a company vice president, who did nothing to reprimand Olsen. Cruz wrote a letter to Marcantonio, requesting that workers treat one another with respect, ¶¶ 24–26, but the letter produced no effect, "and he [Marcantonio] continued making sexually harassive [sic] remarks." ¶ 27. When editing letters typed for him by Cruz, Mosh would on occasion comment "that plaintiff did not understand English because she was Puerto Rican." ¶ 28.

The complaint then alleges plaintiff's termination in March 1990, even though no report had been filed against her and she was never placed on probationary status. On the contrary, she had received verbal and written commendations "from outside companies after she took over as office manager." ¶ 31. Plaintiff was replaced by Marcantonio although Marcantonio "had many complaints against him and recently had his probationary status terminated." ¶ 33. Plaintiff alleges that she was told by Ecolab employees who attended a meeting to which she was not invited that "Marcantonio was introduced as new office manager for Ecolab Pest Control Division, and was being given the opportunity to redeem himself because he was a man and had a family to support." ¶ 35.

As a result of these circumstances, plaintiff alleges that she suffered "emotional distress and fear for her safety." ¶ 36.

The complaint alleges three causes of action: for sexual discrimination; for racial discrimination; and for the intentional infliction of emotional distress.

The complaint alleges jurisdiction under Title VII, and "28 U.S.C. § 1981," presumably an intended reference to 42 U.S.C. § 1981.

The attorney for Cruz is Ruth M. Liebesman, Esq. Liebesman undertook to serve the summons and complaint upon all defendants herself. On June 8, 1992 she went to the Ecolab offices at 185 Franklin Street, New York City. According to Liebesman's affidavit on this motion, she was "greeted by Todd R. Filby," an Ecolab employee, who accepted service on behalf of Ecolab and also on behalf of the individual defendants, Mosh and Marcantonio. According to Liebesman, and in response to her inquiry, Filby stated in substance that he regularly accepted documents intended for Marcantonio and Mosh. Liebesman says in her affidavit that prior to this colloquy, she specifically advised Filby that the summons and complaint were addressed to the two individuals, as well as to Ecolab.

Filby submits an affidavit on this motion denying that Liebesman said that the papers were for Marsh or Marcantonio personally. Filby further denies, contrary to Liebesman's assertion, that Liebesman inquired whether Filby was authorized to accept the papers on behalf of Mosh or Marcantonio. Filby adds that neither individual ever authorized Filby to accept papers of any kind intended for them personally.

The accounts of the attempted service given by the Liebesman and Filby affidavits are irreconcilable. If the individual defendants' motion to dismiss the complaint against them for insufficiency of service·of process turned on the issue of credibility, an evidentiary hearing would be necessary.

## DISCUSSION

All defendants move under Rule 12(b)(1) to dismiss the complaint's allegations of discrimination in hiring and sexual harassment for lack of subject matter jurisdiction, on the ground that Cruz did not allege such misconduct in her EEOC complaint, and that it is not reasonably related to the discriminatory discharge of which she did complain. I agree.

■ Title VII's statutory scheme requires that individuals claiming discrimination first assert those claims at the agency level. The district courts have jurisdiction in subsequent litigation only over such claims, or an employer's acts reasonably related to them. See *Miller v. International Telephone & Telegraph Corp.*, 755 F.2d 20 (2d Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122, *reh'g denied*, 474 U.S. 1015, 106 S.Ct. 552, 88 L.Ed.2d 479 (1985); *Almendral v. New York State Office of Mental Health*, 743 F.2d 963 (2d Cir.1984); *Ritzie v. City University of New York*, 703 F.Supp. 271, 278 (S.D.N.Y.1989); *Torriero v. Olin Corp.*, 684 F.Supp. 1165, 1170 (S.D.N.Y.1988); *Gilliard v. New York Public Library System*, 597 F.Supp. 1069, 1079 (S.D.N.Y.1984).

■ It is well settled in this circuit that a claim of discriminatory retaliation, first asserted in court after the filing of a complaint with the EEOC, is "reasonably related" to the charges made in the EEOC complaint, so that no supplemental filing with the agency is required. *Owens v. New York City Housing Authority*, 934 F.2d 405, 410–11 (2d Cir. 1991). The Second Circuit has also held that where the EEOC complaint contains an allegation that the acts of discrimination were on a "continuing" basis, and the defendants' subsequent acts alleged in the judicial court complaint were "essentially the same as the earlier allegedly wrongful conduct contained in the EEOC complaint," the subsequent acts are "reasonably related" to the EEOC complaint. *Almendral* at 967.

■ In the case at bar, however, Cruz's complaint to the EEOC and the state agency is limited to an allegedly discriminatory discharge. The agency complaint contains no hint of discrimination at the time of Cruz's employment, or. sexual harassment during the course of that employment. Continuing discrimination was not alleged, even in conclusory terms. The agency complaint was one of discriminatory discharge, no less but no more, a discrete claim, standing alone, and

failing to suggest, explicitly or implicitly, any other form of conduct violative of Title VII. In short, Cruz's EEOC charge failed in its important public policy purpose of giving defendants sufficient notice of her intention to raise allegations pertaining to discrimination in areas other than a discriminatory discharge, thereby depriving defendants and the agency itself of the opportunity of reconciliation. *See, e.g., Gilliard* at 1079 ("Gilliard's EEOC charge was limited to a claim of discriminatory discharge. Because the EEOC charge did not give the Library sufficient notice of Gilliard's intention to raise allegations pertaining to discrimination in wages, benefits and training, Gilliard's Title VII claim as to these allegations must be dismissed.").

It follows that, insofar as plaintiff at bar relies upon Title VII to establish this Court's subject matter jurisdiction, her claims of discrimination in hiring and sexual harassment cannot be considered.

But that does not end the matter, at least with respect to her claim for discrimination in hiring. As noted, the complaint, while hardly a model of pleading, appears to invoke 42 U.S.C. § 1981 as an alternative source of subject matter jurisdiction. No comparable agency filing requirements exist with respect to a § 1981 claim.

■ Defendants argue in their brief at n. 2 that § 1981 does not assist Cruz "since allegations of sex-based discrimination are not actionable under the Civil Rights Act of 1866," codified in part at 42 U.S.C. § 1981. That is true; but Cruz's second cause of action alleges racial discrimination, after incorporating by reference all the allegations of the complaint, including those relating to her hiring by Ecolab. Unaccountably, counsel for plaintiff does not argue for § 1981 jurisdiction in the brief opposing defendants' motion. But I am bound to examine the Court's subject matter jurisdiction *sua sponte;* and it is clear that the allegations of the complaint are sufficient to state a claim that defendants discriminated against Cruz on the basis of her Hispanic origin during the hiring process. *See Saint Francis College v. Al-Khazraji,* 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) (a person of Arabian an-

cestry may be protected from racial discrimination under § 1981). To the extent that Cruz's complaint alleges that she was denied the position of exterminator and offered instead a clerical job because of her race, she states a claim under § 1981. That claim will not be dismissed for lack of subject matter jurisdiction.

Defendants are correct in their contention that sex discrimination claims, whether at the time of hiring or for sexual harassment during the course of employment, are not cognizable under § 1981. *See Runyon v. McCrary,* 427 U.S. 160, 167, 96 S.Ct. 2586, 2593, 49 L.Ed.2d 415 (1976); *Bobo v. ITT, Continental Baking Co.,* 662 F.2d 340, 342 (5th Cir.1981), *cert. denied,* 456 U.S. 933, 102 S.Ct. 1985, 72 L.Ed.2d 451 (1982); *Grant v. Morgan Guarantee Trust Co. of New York,* 548 F.Supp. 1189, 1192 n. 5 (S.D.N.Y.1982).

It follows that the following discrimination claims remain for further litigation: plaintiff's claims of discriminatory discharge based upon sex and national origin, under Title VII; and plaintiff's claim for racial discrimination at the time of her hiring, under § 1981. Plaintiff's claim for sexual harassment during the course of her employment falls outside this Court's subject matter jurisdiction, and will be dismissed.

*Claim for Intentional Infliction of Emotional Distress*

■ Count three of the complaint is captioned "Intentional Infliction of Emotional Distress." The count consists of two paragraphs only. ¶ 41 incorporates by reference the factual allegations contained in ¶¶ 1 through 36. ¶ 42 alleges only that the actions of Ecolab, Mosh and Marcantonio "constitute racial discrimination." Presumably plaintiff intends to plead that defendants' racial discrimination caused her emotional distress.

■ This claim arises under New York law. Plaintiff asserts it in this Court under principles of pendent jurisdiction. Under New York law, a plaintiff claiming the intentional infliction of severe emotional distress must allege and prove on the part of a defendant "extreme and outrageous conduct" which "intentionally or recklessly causes se-

vere emotional distress to another." Liability may be found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all reasonable bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Fischer v. Maloney*, 43 N.Y.2d 553, 557, 402 N.Y.S.2d 991, 992–93, 373 N.E.2d 1215, 1216–17 (1978) (citing and quoting Restatement, Torts 2d at § 46). Allegations of conduct failing to rise (or sink) to such an extreme fail to state a cause of action.

I agree with defendants at bar that the conduct charged "does not give rise to liability under this doctrine by any proper definition." *Fischer* at 43 N.Y.2d 557, 402 N.Y.S.2d at 993, 373 N.E.2d at 1217.

In particular, the New York Court of Appeals has made it plain that the New York doctrine of employment at will may not be avoided by alleging the tort of intentional infliction of emotional distress arising out of even an "abusive or wrongful discharge of an at-will-employee." *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 90 (1983). *See also Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir.1985) ("Thus, despite the unacceptability of racial discrimination in civilized society, we have seen no indication that New York courts would consider the conduct here 'outrageous' per se or would otherwise conclude that it sufficed to prove Citibank's liability for intentionally inflicting emotional distress.") (footnote omitted).

Defendant's motion to dismiss plaintiff's claim for the intentional infliction of emotional distress will be granted.

*Service of Process Upon the Individual Defendants*

■ Plaintiff claims to have effected service of the summons and complaint upon Mosh and Marcantonio in accordance with New York law, made applicable to proceedings in federal district courts by Rule 4(c)(2)(C)(i). But plaintiff has not complied with New York law in respect of service upon these individual defendants.

As noted, plaintiff attempted service on Mosh and Marcantonio by leaving copies of the summons and complaint with Filby, the Ecolab employee who, according to plaintiff's counsel and server of process, stated that he was in the habit of and authorized to accept documents intended for Mosh and Marcantonio. So far as the record appears, those were the only steps taken on behalf of plaintiff to effect service on these defendants. While Filby disputes the factual account given by attorney Liebesman, I need not resolve the conflict because this service is insufficient in any event.

N.Y.C.P.L.R. provides in § 308 in pertinent part:

Personal service upon a natural person shall be made by any of the following methods:

1. by delivering the summons within the state to the person to be served; or

2. by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business . . .

The mailing required by § 308(2) must be effected within twenty days of the delivery of the summons to the defendant's place of business or home, as the case may be. Cruz made no follow-up mailing, and so service cannot be sustained under § 308(2).

■ Cruz attempts to bring the case within § 308(1), on the theory that Filby was authorized to accept service on behalf of Marsh and Marcantonio, so that in law these individuals were personally served. That argument cannot survive the Court of Appeals' opinion in *Dorfman v. Leidner*, 76 N.Y.2d 956, 563 N.Y.S.2d 723, 565 N.E.2d 472 (1990), which held in comparable circumstances that misrepresentations of authority, whether made contemporaneously with the service or on prior occasions, will not validate defective delivery. The supplementary practice commentaries to the 1993 Cumulative Annual Pocket Part of 7B McKinney's Consolidated

Laws of New York Annotated says succinctly: "The message of *Dorfman* is clear: personal delivery to 'the person to be served,' *i.e.*, the defendant, is to be taken literally." *Id.* at 54.

Accordingly the complaint will dismissed in its entirety as to defendants Mosh and Marcantonio for insufficiency of service of process. I grant plaintiff leave to attempt effective service upon these defendants, within thirty (30) days of the date of this Opinion. If plaintiff determines to press her claims against these individual defendants, sufficient consideration should be given to the requirements of Rule 11, Fed.R.Civ.P.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss plaintiff's claims for discrimination is granted in part and denied in part.

Defendants' motion to dismiss plaintiff's claim for the intentional infliction of emotional distress is granted. Count three of the complaint is dismissed with prejudice.

The complaint against Mosh and Marcantonio is dismissed for insufficiency of service of process, without prejudice, and with leave to plaintiff to attempt effective service upon these defendants within the time specified in this Opinion.

Counsel for the parties are directed to attend a status conference in Room 307 at 3:00 p.m. on April 16, 1993.

The foregoing is SO ORDERED.