Evelyn COHEN, Plaintiff,

v.

Jeffrey LITT, Robert Henry and Community School Board 12, Defendants.

No. 95 Civ. 9100 (RWS).

United States District Court, S.D. New York.

Dec. 12, 1995.

Armando Montano, Jr., Bronx, NY, for Plaintiff.

Paul A. Crotty, Corporation Counsel of the City of New York, New York City (Mario Frangiose, Katherine Winningham, of counsel), for Defendants.

## OPINION

SWEET, District Judge.

Defendants, school principal Jeffrey Litt ("Litt"), district superintendent Robert Henry ("Henry"), and Community School Board 12 ("CSB 12") (collectively, the "Defendants"), have moved for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ. P., to dismiss the action for alleged violations of the equal protection and due process clauses of the Fourteenth Amendment under 42 U.S.C. § 1983 and for statutory violations of New York Executive Law §§ 290, *et seq.* In the alternative, to the extent their motion to dismiss is denied, Defendants move for a stay of this proceeding pending resolution of Cohen's administrative appeal of her union grievance of her dismissal.

For the reasons set forth below, the motion for judgment on the pleadings is granted.

### Parties

Cohen, prior to July 1, 1994, was a probationary provisional elementary school teacher, employed by the New York City Board of Education.

Litt is, and at all relevant times was, the principal of Community School 67 ("CS 67"), having been appointed by CSB 12.

Henry is, and at all relevant times was, the superintendent of Community School District 12 ("District 12"), having been appointed by CSB 12.

CSB 12 is a local school board, elected by the voters of District 12 and having jurisdiction over CS 67.

### Prior Proceedings

Plaintiff Cohen originally brought this action in New York Supreme Court, Bronx County, by a summons and complaint served on or about November 30, 1994. On December 20, 1994, Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1441, *et seq.* Defendants served and filed their answer to the complaint on December 22, 1994.

On June 28, 1995, Defendants filed notice of this motion on the following grounds: (1) Cohen fails to state a claim of sexual harassment based on a hostile environment theory; (2) Cohen fails to state a claim of sexual harassment based on a *quid pro quo* theory, as she fails to allege either unwelcome sexual conduct or that her reaction to that conduct was used as a basis for affecting the compensation, terms, and/or conditions of her employment; (3) Cohen fails to state a violation of due process under the Fourteenth Amendment; and (4) Plaintiff's allegations do not state a claim against Henry or CSB 12. Oral argument was waived by the parties, and the matter was deemed fully submitted on September 20, 1995.

### Facts as Alleged

For purposes of a motion for judgment on the pleadings, all factual allegations of the non-moving party will be taken as true. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989) (Rule 12(b)(6) motion). The following summarizes the allegations of Cohen's complaint, but represents neither findings of fact nor an opinion about the accuracy of the allegations or their sufficiency in the face of contrary testimony.

"On or about" October 1993, Litt made a sexual advance toward Cohen, saying, "My penis stretches from here to District 1." At some later time, Litt made "another improper statement" to her. Cohen did not submit to what she terms Litt's "sexual advances" and, because of this refusal, Litt gave her an unsatisfactory rating in a performance evalu-

ation completed on or about June 16, 1994. Litt's stated reason for this unsatisfactory rating, Cohen's seven absences during the year, was a pretext. Other teachers with far more frequent absences received satisfactory ratings. Finally, because Cohen did not submit to Litt's sexual advances, Litt discharged her on or about June 30, 1994, causing loss of employment, injured reputation, and emotional distress. At all times, Litt acted under color of state law.

Cohen told Henry about Litt's behavior and also informed him that her unsatisfactory rating was the result of her refusal to submit to Litt's "sexual demands." In reply Henry stated, "This is deja vu," and assured Cohen he would reverse the rating. Henry did not reverse the rating and subsequently wrote a letter indicating that he had not made the statements Cohen attributes to him.

Defendants deny each of Cohen's allegations, except that they admit that Cohen's employment was terminated on or about June 30, 1994. They affirmatively state that Cohen was a provisional probationary teacher and that, given this status, several unexcused absences, and repeated warnings concerning those absences, Cohen was not similarly situated to other teachers.

### Discussion

#### I. Legal Standards

The issue presented is whether Cohen adequately pleads a claim so as to survive Defendants' Rule 12 motion for judgment on the pleadings, equivalent to a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 & n. 2 (2d Cir.1977). The Supreme Court defined the standard for this issue in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), when it said:

> [T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which [she] bases [her] claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.

*Id.* at 47, 78 S.Ct. at 103 (citation omitted) (12(b)(6) motion). The *Conley* Court further stated that in appraising sufficiency, a trial court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Id.* at 45–46, 78 S.Ct. at 101–03 (footnote omitted); *see also H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. at 249, 109 S.Ct. at 2905 (in reviewing a 12(b)(6) dismissal, the Court reads the facts alleged "in the light most favorable to [nonmovants]"); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (dismissal of a complaint appropriate only if relief could not be granted "under any set of facts that could be proved consistent with the allegations").

■ A plaintiff at the pleading stage must clear two minimal thresholds. First, she must state her claim and the basis for it with a level of specificity sufficient to provide the defendants fair notice. *Conley*, 355 U.S. at 47, 78 S.Ct. at 103. Second, she must show that the substance of the claim is sufficient merely to proceed to the introduction of evidence. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims"). As a matter of practice, the level of detail in pleading necessary to fulfill these two functions and withstand a defendant's motion to dismiss, either under Rule 12 or Rule 12(b)(6), is likely to be the same in most, though not all, cases. *See, e.g., In re Nasdaq Market–Makers Antitrust Litigation*, 894 F.Supp. 703, 709 (S.D.N.Y.1995) (Sweet, J.) (while general liberal pleading requirements of the Federal Rules apply to antitrust claims, greater specificity in antitrust pleading necessary as a means of providing adequate notice to potential defendants).

■ In evaluating a motion to dismiss, a court need not accept a complaint's legal conclusions and unwarranted factual deductions. *Oneida Indian Nation of New York v. New York*, 520 F.Supp. 1278, 1308 (N.D.N.Y. 1981), *aff'd in part, rev'd in part on other*

*grounds,* 691 F.2d 1070 (2d Cir.1994) *see also Yusuf v. Vassar College,* 35 F.3d 709, 713 (2d Cir.1994) ("[[A] complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)") (citation and internal quotation marks omitted); *Furlong v. Long Island College Hosp.,* 710 F.2d 922, 927 (2d Cir.1983) (Federal Rules do "not permit conclusory statements to substitute for minimally sufficient factual allegations"). "In practice a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some* viable legal theory." *Fort Wayne Telsat v. Entertainment & Sports Programming Network,* 753 F.Supp. 109, 111 (S.D.N.Y.1990) (citations and internal quotation marks omitted). On the other hand, the non-moving party gains the benefit of broad presumptions as to the facts. A court will take as true all material allegations composing the factual predicate of the claim of which the movant seeks dismissal, since the task is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984) (citation and internal quotation marks omitted). Improbability as to recovery is not the test for dismissal. *Scheuer v. Rhodes,* 416 U.S. at 236, 94 S.Ct. at 1686. Further, these presumptions run particularly strongly in favor of a non-movant alleging a violation of her civil rights. *Dwyer v. Regan,* 777 F.2d 825, 829 (2d Cir. 1985) (citing cases).

Whether Cohen has met her pleading burden as to Litt and Henry must be tested according to the substantive standards of the various theories under which she could proceed, *see Fort Wayne Telsat v. Entertainment & Sports Programming Network,* 753 F.Supp. at 111: either pursuant to § 1983, as she has complained, or to any other available

sources of right. *Bowers v. Hardwick,* 478 U.S. 186, 201–02, 106 S.Ct. 2841, 2849–50, 92 L.Ed.2d 140 (1986) (Blackmun, J., dissenting). On the basis of her allegations of harassment, Cohen may plead a claim under Title VII and New York Executive Law §§ 290, *et seq.* She may also plead a separate claim under § 1983, since, under Second Circuit law, a plaintiff can assert a claim under § 1983, provided that some law other than Title VII is the source of the right allegedly infringed. *Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 143 (2d Cir. 1993). Thus, Cohen's pleadings may support a claim under the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.

In her opposition papers, Cohen has stated that she has no objection to Defendants' motion to dismiss her claim as to CSB 12. That claim will be dismissed.

## II. *Cohen Inadequately Pleads Sexual Harassment Under Title VII and New York Executive Law*

 Title VII forbids employers discriminating "against any individual with respect to ... compensation, terms, conditions, or privileges of employment, because of such individual's sex...." 42 U.S.C. § 2000e–2(a)(1) (1994).[1] Sexual harassment under Title VII includes "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature," 29 C.F.R. § 1604.11(a) (1995), linked to "the grant or denial of an economic *quid pro quo,*" *see Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986), and sexual misconduct, whether or not in the form of sexual blackmail, when "such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a)(3) (1995); *see Meritor Sav. Bank v. Vinson,* 477 U.S. at 65, 106 S.Ct. at 2404; *see also Carrero v. New York City Housing Auth.,* 890 F.2d 569, 577

---

**1.** The Second Circuit treats the standards of New York Executive Law § 296 and Title VII as identical. *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 n. 4 (2d Cir.1995) (citing cases of the New York Court of Appeals and Supreme Court);

*Song v. Ives Labs., Inc.,* 957 F.2d 1041, 1046 (2d Cir.1992) (citing cases of the New York Court of Appeals and Appellate Division). Thus, a Title VII analysis equally governs Cohen's § 296 claims.

(2d Cir.1989). In order adequately to plead a violation of Title VII and New York Executive Law § 296 on the part of Litt and Henry,[2] Cohen would therefore need to state a claim under either a hostile environment or a *quid pro quo* theory. *Tomka v. Seiler Corp.*, 66 F.3d at 1304–05 (citations omitted); *Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir.), *cert. denied* —— U.S. ——, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994) (citations omitted).

■ While a claim under Title VII is possible under one of these theories, a court's jurisdiction to hear such a claim normally depends, at a minimum, on a plaintiff's having initiated Title VII administrative remedies through the Equal Employment Opportunities Commission (EEOC) and state or local agencies. *See Cruz v. Ecolab Pest Elimination Div., Ecolab, Inc.*, 817 F.Supp. 388, 391 (S.D.N.Y.1993) ("Title VII's statutory scheme requires that individuals claiming discrimination first assert those claims at the agency level"), *citing Miller v. Intern. Telephone & Telegraph Corp.*, 755 F.2d 20 (2d Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985) (other citations omitted). This process culminates either in a decision that the case merits further proceedings or the issuance by the EEOC of a "right to sue" letter.

Cohen fails to plead any facts that would bring her complaint within the subject matter jurisdiction of a federal court for Title VII purposes. Thus, federal statutory causes of action otherwise viable under Title VII at the pleading stage offer her no support in this motion to dismiss. Further, unless an adequately pled federal cause of action is found, there is no need to reach the issue of whether the same jurisdictional limitations apply to potential pendant claims under New York Executive Law § 296.

### III. *Cohen Inadequately Pleads Equal Protection Violations Under § 1983*

■ Under the law of the Second Circuit, "[a] plaintiff cannot use [42 U.S.C. § 1983] to gain perceived advantages not available to a Title VII claimant, but a plaintiff can assert a claim under Section 1983 if some law other than Title VII is the source of the right alleged to have been denied." *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d at 143 (citations omitted); *see also Gierlinger v. New York State Police*, 15 F.3d 32, 34 (2d Cir.1994).

■ A plaintiff may state a claim under § 1983 against a public official for improper sexual conduct that creates a hostile work environment. *Saulpaugh*, 4 F.3d at 143–44 (citations omitted). Such harassment constitutes disparate treatment on account of sex, *id.* at 144, and is actionable so long as it took place under color of official authority, *Carrero v. New York City Housing Auth.*, 890 F.2d at 577, *citing Monroe v. Pape*, 365 U.S. 167, 172, 187, 81 S.Ct. 473, 476, 484, 5 L.Ed.2d 492 (1961).

■ There is no clear law in this circuit as to the scope of liability for a hostile work environment under § 1983. This stands in contrast to the highly articulated elements of liability under the Title VII hostile environment theory. Thus, although the standard of liability for a hostile environment for a Title VII claim is not identical to a claim under § 1983, Title VII law may still provide significant guidance in judging Cohen's pleadings. *See Bohen v. City of East Chicago, Ind.*, 799 F.2d 1180, 1185–86 (7th Cir.1986).

### A. *Hostile Environment Theory Under Title VII*

■ The Supreme Court established the standards for hostile environment claims under Title VII in *Meritor Sav. Bank, see* 477 U.S. at 64–67, 106 S.Ct. at 2404–06, and further elaborated these standards in *Harris v. Forklift Sys.*, —— U.S. ——, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The basis of such claims extends beyond tangible economic loss. *Meritor Sav. Bank*, 477 U.S. at 64, 106 S.Ct. at 2404. While a victim's subjective perception that a work environment is abusive is necessary to finding a Title VII violation, *Harris*, —— U.S. at ——, 114 S.Ct. at

---

**2.** While the complaint refers somewhat loosely to Henry's "aid[ing] and abett[ing]" Litt and "adopt[ing his] misconduct," it is clear from the circumstances alleged that Cohen's claim against Henry depends on a proper claim against Litt.

370, such a perception is not in itself sufficient: "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Id.*

The *Harris* Court's standard for finding a hostile environment takes a "middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Id.* Title VII "comes into play before the harassing conduct leads to a nervous breakdown," *id.*, at ——, 114 S.Ct. at 370, and does not require serious effect on "employees' psychological well-being." *Id.* at —— – ——, 114 S.Ct. at 370–71. Tangible effects of pervasive discriminatory conduct, such as detracting from employees' work performance, discouraging them from remaining on the job, and preventing advancement, are markers of an abusive workplace. *Id.* But such objective effects are not in themselves necessary to a finding of violation, since a pervasively abusive work environment will itself offend Title VII. *Id.* at ——, 114 S.Ct. at 371.

■■■ Among the circumstances that may be relevant to substantiating a hostile environment claim are the frequency and severity of discriminatory conduct, whether it is physically threatening or humiliating or involves mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Id.* at ——, 114 S.Ct. at 371. "[M]ere utterance of an ... epithet which engenders offensive feelings in the employee does not sufficiently affect the conditions of employment to implicate Title VII," *id.* at ——, 114 S.Ct. at 370 (quoting *Meritor Sav. Bank,* 477 U.S. at 67, 106 S.Ct. at 2405) (citation and internal quotation marks omitted), since actionable sexual harassment "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Sav. Bank,* 477 U.S. at 67, 106 S.Ct. at 2405 (citation, internal brackets, and internal quotation marks omitted). While the safeguards of the equal protection clause may not be assumed to be equivalent to those of Title VII, exten-

sive intentional discriminatory conduct, *see Batson v. Kentucky,* 476 U.S. 79, 93, 106 S.Ct. 1712, 1721, 90 L.Ed.2d 69 (1986), may be taken as a violation of § 1983 of the kind identified in *Saulpaugh. See Bohen v. City of East Chicago, Ind.,* 799 F.2d at 1187 (identifying intentional discrimination as the gravamen of an equal protection claim, as distinguished from the altered conditions of employment that mark a cause of action under Title VII). Moreover, a court can find liability under § 1983 on the part of "responsible supervisors, for failing properly to investigate and address allegations of sexual harassment when through this failure, the conduct becomes an accepted custom or practice of the employer." *Gierlinger v. New York State Police,* 15 F.3d at 34 (*citing Bohen,* 799 F.2d at 1189).

■■■ The Court of Appeals has said that to make out a *prima facie* case of sexual harassment under Title VII based on a hostile work environment, a plaintiff must show: "(1) that she is a member of a protected group; (2) that she was subject to unwelcome advances; (3) that the harassment was based upon her sex; and (4) that the harassment affected a term, condition or privilege of employment." *Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1042 (2d Cir.1993) (citing *Meritor Sav. Bank*). Adapting this standard in the light of equal protection clause's requirement of intentional discrimination and the Court of Appeals' opinion in *Saulpaugh,* a test for an equal protection violation under § 1983 based on sexual harassment emerges: a violation under § 1983 occurs when (1) the plaintiff was subject to intentional harassment, (2) based on sex, (3) under color of state law, and (4) sufficiently extensive to render the work environment hostile to a plaintiff.

■■ Cohen has failed adequately to plead an equal protection claim under a hostile environment theory. Taking the factual allegations of the complaint to be true, Cohen was subject to unwelcome harassing behavior based on her sex and under color of state law. Cohen has alleged that Litt made a sexual advance toward her and that, as a part of this advance, he said, "My penis stretches from here to District 1." It is

unclear from the face of the complaint whether this remark constituted the main part or a small part of the sexual advance Cohen alleges. Without any indication of context, there is no way to know whether it amounts to more than a crude statement. Construing the complaint in the light most favorable to Cohen, however, the remark may be viewed plausibly as part of a sexual advance. Moreover, the allegation of a "sexual advance," while lacking detail as to place and circumstance, is sufficiently specific in itself to be taken as a fact and therefore, at the pleading stage, taken as true. Cohen further alleges that she did not submit to this alleged sexual advance. It was thus unwelcome and a form of harassment. She does not allege that the advance included any offensive touching or threats.

Cohen's further allegation of "another improper statement" is insufficiently specific or factual to add to the factual predicate of her claim. The allegation elsewhere in the complaint of "sexual advances" does nothing to convert the vague assertion of an "improper remark" into even the minimally factual allegation of a second "sexual advance."

Cohen alleges that her refusal to submit to what, for the purposes of judging the pleadings, was a single sexual advance caused Litt to give her an unsatisfactory rating roughly eight months later, and that the rating became the basis of her discharge. This allegation of retaliation leading to dismissal is also sufficiently specific and factual to be taken as true at this stage.

The question as to Cohen's adequately pleading a claim under § 1983 is whether the single unwelcome sexual advance factually alleged, combined with allegation of a retaliatory action by Litt leading to discharge, is sufficient to render the work environment at CS 67 hostile to Cohen. Viewed in light of the preceding discussion, Cohen's complaint is inadequate in pleading a claim of a hostile work environment violating the equal protection clause. Her allegation of a single sexual advance that did not, as pled, include physical contact or coercion, is neither severe nor pervasive in the terms the Supreme Court defined in *Meritor Sav. Bank* and *Harris v. Forklift Sys.*, here adopted as a standard of reference for equal protection claims. The allegation of retaliation leading to discharge does not alter this analysis. The retaliation alleged could only have affected a minor portion of Cohen's tenure, mitigating the severity of any effect on the work environment. Cohen's complaint neither provides notice of an alleged law violation nor merits the introduction of further evidence. It thus fails adequately to plead a cause of action under § 1983 against Litt based on a hostile environment theory. The complaint against Henry, based on his allowing sexual harassment to become "an accepted practice or custom," therefore fails as well. *Gierlinger v. New York State Police*, 15 F.3d at 34.

## IV. Cohen Inadequately Pleads Substantive Due Process Violations Under § 1983

Cohen also pleads due process violations under § 1983. The Supreme Court has announced, "the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985). In order to plead such a claim adequately, Cohen must allege facts that state sufficiently that she has been "deprived ... of a right secured by the Constitution [and laws] of the United States, and that any such deprivation was achieved under color of law." *Paul v. Davis*, 424 U.S. 693, 696–97, 96 S.Ct. 1155, 1158–59, 47 L.Ed.2d 405 (1976) (footnotes and citation omitted). Only claims of deprivation of property or liberty are relevant here.

The defining element of a property interest in a benefit, such as continuing employment, is "a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Such claims must be determined according to state law. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Bd. of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709 ("Property interests ... are created and their dimensions are defined by existing rules or understandings that stem from an independent source such

as state law ...."). Under New York law, however, service as a provisional probationary teacher does not confer a property right. *See* N.Y.Educ.Law § 2590–j 7(a) (McKinney 1995); *see also Castro v. New York City Bd. of Educ.*, 777 F.Supp. 1113, 1117 (S.D.N.Y. 1990) ("It is well settled under New York law that a probationary employee has no property rights in [her] employment.... A probationary employee who has been dismissed is therefore not entitled to a hearing ..."). Cohen thus has no property right at stake that might entitle her to the substantive protections of the Fourteenth Amendment.

■ Cohen may also assert the deprivation of a liberty interest, based on a "charge against [her] that might seriously damage [her] standing and associations in his community," *Bd. of Regents v. Roth*, 408 U.S. at 573, 92 S.Ct. at 2707, or a "stigma or other disability that foreclose[s her] freedom to take advantage of other employment opportunities." *Id.; see also Brandt v. Board of Coop. Educ. Servs.*, 820 F.2d 41, 43 (2d Cir.1987) (public governmental charges accompanying dismissal that impair the opportunity to obtain other employment implicate a liberty interest). A stigmatizing charge may implicate a liberty interest either when disclosed in the course of an employee's dismissal or by being placed in an employee's personnel file in circumstances such that it is "likely to be disclosed to future employers and deprive the employee of job opportunities." *Id.* at 45.

■ The Due Process Clause protects such a liberty interest, whether claimed by a tenured or a probationary employee. As the Supreme Court has made clear, however, protection of the liberty interest of a probationary employee, who does not, after all, have a property right in the job itself, is directed to a specific, limited purpose:

> The hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely to provide the person an opportunity to clear [her] name. If [she] does not challenge the substantial truth of the material in question, no hearing would afford a promise of achieving that result for [her].... Only if the employer creates

and disseminates a false and defamatory impression about the employee in connection with [her] termination is such a hearing required.

*Codd v. Velger*, 429 U.S. 624, 627–28, 97 S.Ct. 882, 884–85, 51 L.Ed.2d 92 (1976) (citation omitted). Thus, Cohen, an former untenured employee who does not challenge the substantial truth of the attendance record on which her dismissal was based, has no liberty interest that a hearing might vindicate. She remains "as free as before to seek another [job]." *Bd. of Regents v. Roth*, 408 U.S. at 575, 92 S.Ct. at 2708 (citation omitted).

Cohen's complaint therefore fails adequately to plead a deprivation of property or liberty so as to gain the substantive due process protections of the Fourteenth Amendment.

## V. *Cohen Inadequately Pleads Procedural Due Process Violations Under § 1983*

■ "An essential due process right is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. at 541, 105 S.Ct. at 1492, *quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). Implicit in this statement, as in all the Supreme Court's Due Process jurisprudence, is that procedural protections depend on the existence of substantive rights. *See, e.g., Bd. of Regents v. Roth*, 408 U.S. at 576–78, 92 S.Ct. at 2708–10 (teacher without a contract right to continuing employment has no property interest sufficient to require state employer to provide a hearing upon non-renewal).

■ Cohen's probationary status does not confer the kind of property right in continuing employment that would trigger a procedural due process right. Therefore, she has inadequately pled violations of her procedural rights under the Fourteenth Amendment.

*Conclusion*

Defendants' motion for judgment on the pleadings is granted and the Complaint is dismissed with leave to replead. Given that Cohen fails adequately to plead a claim under federal law, no jurisdiction over related state claims is retained. There is no need to reach Defendants' motion for a stay.

It is so ordered.