Joellyn GRAY, Christopher M. Smith, Malcolm Hall, Jr., Beekman V. Beavers, Elizabeth B. Jones, Frank Conant, David E. Erb, John L. Goodall, Albert J. Duryea, Peggy J. Stephens, John D. Stephens, Plaintiffs–Appellants,

v.

The TOWN OF DARIEN, the Board of Selectmen, Board of Finance and other Boards and Commissioners, acting singly or in concert, in whole or in part, together with all officers, employees, agents and attorneys thereof, Defendants–Appellees.

No. 668, Docket 90–7660.

United States Court of Appeals, Second Circuit.

Argued Nov. 21, 1990.

Decided March 1, 1991.

Before VAN GRAAFEILAND, WALKER, Circuit Judges, and LEVAL, District Judge.*

WALKER, Circuit Judge:

Plaintiffs, who are citizens of the Town of Darien, Connecticut, appeal from an order of summary judgment of the United States District Court for the District of Connecticut (T.F. Gilroy Daly, Judge) dismissing their complaint against the town and various of its officials. The complaint seeks to nullify the result of a town-wide referendum that failed to overturn the decision of the Representative's Town Meeting to issue $2 million in bonds to finance moderate rental housing. The first cause of action alleges that plaintiffs were denied equal protection of the laws by the town charter's requirement that a referendum vote to overturn a town decision must be supported by at least 25% of all eligible voters. The second cause of action alleges that by limiting the polling places and voting hours for the referendum, by issuing a complex referendum notice and by preventing plaintiffs from distributing flyers, defendants conspired to deprive plaintiffs of their civil rights and voting rights under 42 U.S.C. §§ 1983 and 1985(3). Because we hold the 25% majority referendum provision in the town charter to be constitutional and conclude that the district court did not err in finding that plaintiffs failed to produce any evidence of injury caused by the alleged conspiracy, we affirm.

## Background

On December 12, 1988, at a regular meeting of Darien's Representative Town Meeting (Town Meeting), the legislative body approved an appropriation of $2 million, to be funded by a bond issue, for the purchase of a land parcel for moderate rental housing. Those opposed to the Town Meeting's action successfully petitioned for a town-wide referendum vote on the proposed transaction to be held on February 7, 1989. Pursuant to Darien's town charter those voting to overturn an action of the Town Meeting in a referendum must

William P. Jones, Darien, Conn., for plaintiffs-appellants.

William B. Rush (James T. Shearin, Pullman, Comley, Bradley & Reeves, of counsel), Bridgeport, Conn., for defendants-appellees.

---

* The Hon. Pierre N. Leval, United States District Judge, Southern District of New York, sitting by designation.

win a majority of the votes cast and must exceed 25% of all of the town's electors as of the last annual municipal election in order to prevail.

On February 6, 1989, the day before the referendum, plaintiff Joellyn Gray was distributing leaflets at the Darien train station encouraging electors to vote in opposition to the referendum when she was stopped by two police officers, one of whom testified that citizens had complained in the past that leaflets placed on car windshields caused litter. She was neither arrested nor issued a citation. The testifying officer denied knowledge of the contents of the leaflets and said he was following his normal policy and procedure.

On February 7, 1989, the town held the referendum vote. The Town's Board of Selectmen fixed the time for the polls to be open from 12:00 noon to 8:00 p.m. and designated the Darien Town Hall as the only place for voting. Since 1951, when Darien was first chartered, three previous referenda had been held. In referenda held in 1957 and 1958, three polling places were designated corresponding to the town's three districts. In a 1972 referendum, six polling places corresponding to the town's six districts were utilized. In each case the polls were open from 6:00 a.m. to 8:00 p.m. The record indicates that in the 1988 general election, when six polling places were also open from 6:00 a.m. to 8:00 p.m., two of the six were located together in the Darien Town Hall that had been constructed in 1984. The record also indicates that for the referendum vote at issue here at least twelve voting machines—two for each of Darien's six districts—were located in the single Town Hall polling place and that notices referring voters to the Town Hall were placed at the four unused polling places.

The question posed in the February 7, 1989 referendum was the following:

Shall the following action of a town meeting held on December 12, 1988 be approved: Resolution approving an appropriation and bond authorization of $2,000,000 for the purchase of the Prindle–Hopkins property on the northeast corner of Leroy Avenue and Squab Lane to be used for moderate rental housing?

Since the "No" votes fell 262 votes short of 25% of the registered voters, the town selectmen announced that they would proceed with the purchase of the property.

### Proceedings in the District Court

The plaintiffs filed their complaint on March 16, 1989, and on April 6, 1989, following a hearing, the district court denied plaintiffs' motion for a preliminary injunction. On May 24, 1989, the town took title to the land.

The defendants answered and, pursuant to a scheduling order under Fed.R.Civ.P. 16(e) that permitted discovery during the six months after the filing of the complaint, the defendants completed discovery. On October 11, 1989, defendants filed a motion for summary judgment.

Plaintiffs sought no discovery until they noticed depositions on November 22, 1989. On November 30, plaintiffs opposed defendants' summary judgment motion and cross-moved for summary judgment on the first count of the complaint. Defendants also moved for a protective order since plaintiffs had failed to seek discovery during the six month period allowed by the scheduling order or to move for an extension. On December 5, 1989, the district court granted defendants a protective order precluding further discovery by plaintiffs. On January 2, 1990, the district court denied plaintiffs' motion to reopen and extend the time of discovery finding that plaintiffs had failed to demonstrate good cause for granting the motion.

On June 29, 1990, the district court granted summary judgment for defendants, denied summary judgment for plaintiffs and dismissed the complaint. This appeal followed.

### Discussion

■ Plaintiffs claim that Darien's "super majority" provision for referendum votes overturning actions of the Town Meeting denied them equal protection secured by the Fourteenth Amendment. Section 58(e) of the Darien Town Charter provides:

Any action so submitted to a special electors' meeting shall stand approved unless a majority of those voting thereon

shall have voted "No" and such majority shall exceed in number twenty-five per cent of all the electors of the Town as of the last annual municipal election.

Plaintiffs argue that their "landslide" victory in opposition to the town's moderate rental housing land purchase bond issue of 2,334 "No" votes to 1,508 "Yes" votes was impermissibly nullified by the requirement that the number of "No" votes exceed 25% of eligible voters; plaintiffs, despite winning a majority of votes, fell 262 votes short of meeting this requirement. The "super majority" provision's effect as applied, plaintiffs contend, was to deny them "the right to an equal vote and the right not to have one's vote diluted or rendered less effective than the next man's." This, they say, amounted to a denial of equal protection of the laws under the Constitution's Fourteenth Amendment, actionable under 42 U.S.C. § 1983. In our view the district court correctly rejected this claim and thus properly dismissed plaintiffs' first cause of action.

In *Gordon v. Lance*, 403 U.S. 1, 91 S.Ct. 1889, 29 L.Ed.2d 273 (1971), the Supreme Court found no constitutional infringement in West Virginia's state constitutional requirement that political subdivisions could not incur bonded indebtedness or increase tax rates without approval of 60% of the voters in a referendum. The Court distinguished those cases in which the voting requirement unconstitutionally favored a class other than those who voted a particular way in an election, such as *Gray v. Sanders*, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963) (according greater weight to voters of one county than another) and *Cipriano v. City of Houma*, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) (limiting voting right in bond referendum to "property taxpayers").

While reaffirming the principle that an individual may not be denied access to the ballot because of some extraneous condition, *see, e.g., Gomillion v. Lightfoot*, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960) (race); *Kramer v. Union Free School Dist.*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) (tax status); *Carrington v. Rash*, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965) (military status), the *Gordon* Court upheld a "three-fifths re-

quirement applie[d] equally to all bond issues for any purpose, whether for schools, sewers, or highways." 403 U.S. at 5, 91 S.Ct. at 1891–92. The Court could find no constitutional impairment in a provision that, by altering the voting requirement, made it less likely to achieve governmental outcomes which were not targeted at any "discrete and insular minorit[ies]." *Id.*

*Gordon v. Lance* compels our decision in favor of the town defendants in this case. In *Gordon*, the 60% majority requirement served West Virginia's rational, non-discriminatory purpose of ensuring that tax increases and bonded indebtedness have extra public support. Neither specific projects nor classes of persons were targeted for discriminatory treatment. In this case, the Darien Town Charter's requirement that a 25% voter threshold must be met before a referendum can overturn the town's decision is similarly non-discriminatory. The fact that the provision makes it more difficult for those opposed to a decision of the town's elected officials to change that decision than would be the case if only a simple majority were required is constitutionally irrelevant. The provision simply accords added weight to the decision of elected officials. "[T]here is nothing in the language of the Constitution, our history, or our cases that requires that a majority always prevail on every issue." *Id.* at 6, 91 S.Ct. at 1892. Indeed, there is no constitutional necessity that the town provide a referendum vote at all. Therefore, we can find no constitutional infirmity, when having provided for a referendum, the town conditions it in a non-discriminatory manner.

■ Plaintiffs' second claim is that the Darien Selectmen conspired to deprive plaintiffs and others who would have voted "No" at the referendum of their civil rights in contravention of 42 U.S.C. §§ 1983 and 1985(3). The complaint alleges that by confining voting to the town hall instead of using the four additional locations employed in the previous election, by limiting the voting hours from noon to 8:00 p.m. instead of 6:00 a.m. to 8:00 p.m., by issuing a purportedly confusing notice of the refer-

endum, and by the policemen's actions in preventing plaintiffs from distributing leaflets in the station parking lot, the defendants caused a lower voter turnout resulting in the referendum's defeat.

■ To state a civil rights conspiracy under § 1985(3), a plaintiff must allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *United Brotherhood of Carpenters & Joiners of America v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3355–56, 77 L.Ed.2d 1049 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). In applying this standard, the district court held that plaintiffs' case failed because they had proffered no evidence that they had been deprived of a constitutional right. The court stated: "Although plaintiffs allege practices such as the reduction in polling places which theoretically might have created … problems …, they have failed to offer any evidence that any of these problems *actually* occurred." We agree with the district court.

Plaintiffs point to *Ury v. Santee*, 303 F.Supp. 119 (N.D.Ill.1969), in which an election was overturned when a reduction in polling places resulted in overcrowding that prevented people from voting. But there is no evidence in this case that limiting polling places and voting hours had that effect. As the district court noted, plaintiffs have failed to produce a single person who claims to have been prevented from voting by these limitations. As for plaintiffs' claim that defendants prevented them from distributing leaflets that would have informed citizens about the referendum and that the three-page referendum notice was confusing, they have similarly failed to produce anyone who claims not to have voted because he or she was unaware of the purpose of the vote or the time and location of voting.

Because we dispose of plaintiffs' conspiracy claim alleged in the second cause of action on the basis that there has been no showing of a constitutional deprivation, we need not reach such issues as whether the complaint sufficiently alleged a conspiracy or concerted action or whether defendants' conduct could fairly be said to be in furtherance of an agreement improperly to inhibit voting in the referendum. We note that by holding the voting from noon to 8:00 p.m., the town was acting in accordance with Connecticut's Advisory Guidelines on municipal referenda. Moreover, there is no explicit requirement in the Guidelines that polls be open in more than one location. The referendum notice, while lengthy, provided the requisite information and was in no respect misleading. As for the actions of the Darien police in stopping the distribution of leaflets in the train station, there was no evidence that they were connected to any effort on the part of any Selectman to influence the referendum vote, much less to a conspiracy. To the extent a free speech impairment is alleged, there is also no evidence that the actions of the police were anything other than an attempt to prevent litter by undertaking a reasonable content-neutral law enforcement action. *See Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).

On their conspiracy claim, the plaintiffs have failed to respond to the summary judgment motion by coming forward with evidence which if credited would have entitled them to the relief sought in their complaint. In such circumstances, summary judgment should be granted under Fed.R. Civ.P. 56(c) "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Plaintiffs have failed "to make a showing sufficient to establish the existence of an element essential" to their case. *Id.; see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citations omit-

ted) (to deny summary judgment, must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party"); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("[I]f the factual context renders respondents' [conspiracy] claim implausible ... respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary.")

■ In a summary judgment context, an "opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of [a summary judgment] motion." *Contemporary Mission, Inc. v. U.S. Postal Service*, 648 F.2d 97, 107 (2d Cir.1981) (quoting *Neely v. St. Paul Fire & Marine Ins. Co.*, 584 F.2d 341, 344 (9th Cir.1978)). Plaintiffs assert that if they had been able to conduct further discovery, facts could have been developed to support their claim and that the district court abused its discretion in granting defendants' motion for a protective order that cut off discovery. However, plaintiffs only speculate as to what evidence, if any, further discovery would produce. In any event, in light of plaintiffs' failure to seek any discovery in the six months provided by the district court's scheduling order and failure to show good cause for a reopening or extension of that order, we cannot say that the district court abused its discretion in cutting off discovery and in later denying plaintiffs' motion to reopen it. *See Contemporary Mission*, 648 F.2d at 107 (not abuse of discretion to deny discovery and grant summary judgment where plaintiff fails to produce specific facts in conspiracy allegation). Thus, plaintiffs were left with only the "mere hope" that evidence might develop at trial which would breathe life into their claim. This was insufficient to overcome defendants' motion for summary judgment.

Affirmed.