William M. GREENE, Sr. and Karen M. Greene, by and on behalf of themselves and William M. Greene, Jr. and Patricia M. Donnelly, both minors, Plaintiffs,

v.

Barbara HAWES, Christina Norton, Janet Rennell, Roxanne Day, Paul Maroun, Dean Lefebvre, and Daniel McClelland, in their individual, corporate, and official capacities, Defendants.

No. 95–CV–1033.

United States District Court,
N.D. New York.

Jan. 17, 1996.

138

William M. Greene, Sr., et al., Tupper Lake, NY, Plaintiffs pro se.

Office of the Attorney General, Department of Law, Albany, NY (Sue H.R. Adler, Asst. Atty. Gen., of counsel), for Defendants Barbara Hawes, Christina Norton, Janet Rennell, and Clarence Marsh.

Public Employees Federation, Albany, NY (Lisa M. King, of counsel), for Defendant Roxanne Day.

Office of David W. Johnson, Tupper Lake, NY (Meredith Neverett, of counsel), for Defendants Paul Maroun, Dean Lefebvre, and Daniel McClelland.

## MEMORANDUM–DECISION and ORDER

McAVOY, Chief Judge.

### I. INTRODUCTION

Plaintiffs **William M. Greene, Sr., Karen M. Greene, William M. Greene, Jr., and Patricia Donnelly** commenced this action by filing a complaint on July 28, 1995. They generally allege pursuant to 42 U.S.C. §§ 1983 and 1985(3) that defendants **Barbara Hawes, Christina Norton, Janet Rennell, Clarence Marsh ("State Defendants"), Roxanne Day ("Day"), Paul Maroun, Dean Lefebvre and Daniel McClelland ("Local Defendants")**, acting collectively and individually, have committed fraud against plaintiffs and violated the Constitution, federal law, and state law. Each defendant now moves to dismiss the Complaint—State and Local Defendants pursuant to Fed.R.Civ.P. 12(b)(6) and defendant Day pursuant to Fed.R.Civ.P. 12(b)(1), (5), & (6).

### II. BACKGROUND

Plaintiff William M. Greene, Sr. ("Mr. Greene"), is an employee at Sunmount Developmental Center ("Sunmount") in Tupper Lake, New York, part of the New York State Office of Mental Retardation and Developmental Disabilities. He brings this action *pro se* on behalf of himself, his wife Karen M. Greene ("Mrs. Greene"), who also has worked at Sunmount, and his two dependent children, William M. Greene, Jr., and Patricia M. Donnelly. According to the statement of the case contained in the Complaint, plaintiffs' action arises "from State and Local Government Officials, Union Officials, and their representatives," acting in "bad faith" to commit "fraud" or "silence as fraud", fol-

lowed by a series of constitutional and statutory deprivations...." (Pls' Comp. ¶ 1.)

Plaintiffs initially contend that they were fraudulently induced into moving to Tupper Lake by representations that Sunmount was an "expansion" facility and was not slated for closure like many other state developmental centers. Plaintiffs claim that after they moved to Tupper Lake they learned that Sunmount was in fact scheduled to close. Such closure would, in plaintiffs' eyes, have a severe and adverse economic impact on plaintiffs themselves and the surrounding community. The State Defendants contend, however, that "contrary to this assertion plaintiffs' own exhibits show that Sunmount is *not* closing. Instead of closing, Sunmount's clients will be relocated to community residences throughout the catchment area encompassed by the Sunmount Developmental Disabilities Service Office." (State Defs' Mem.Supp. Dism. at 2.)

Notwithstanding the parties' dispute over whether Sunmount is closing, Mr. Greene alleges that after he became aware of the pending changes he became actively involved in seeking alternatives to the closure. These actions included engaging in a dialogue with defendant Hawes, Director at Sunmount, lobbying the New York State Legislature, posting petitions at local businesses, and forming "The Citizens Action Group for Tupper Lake Jobs" ("Action Group") to campaign locally. Mr. Greene next asserts that because of his activities, Sunmount management and local officials retaliated against him and his family. Allegedly, the health and safety of his wife and unborn child were intentionally jeopardized in January or February of 1994 by Mrs. Greene's supervisors, defendants Norton and Rennell, who required the pregnant Mrs. Greene to supervise additional, assaultive clients in the swimming pool at Sunmount. Plaintiffs also contend that State Defendants attempted to establish a system of "fear and reprisal" with the intention of hindering Mr. Greene's lobbying activities and his constitutional rights to protest. For example, plaintiffs allege that defendant Marsh denied them their rights because he would not submit one of their petitions to the Office of Equal Opportunity. Mr. Greene also claims that State defendants would not allow him to take vacation time to lobby the Legislature.

State Defendants counter plaintiffs' allegations by noting that "plaintiffs' own exhibits show that plaintiff Karen Greene did not have to supervise additional clients [in the swimming pool]." (State Defs' Mem.Supp. Dism. at 4.) Apparently, when Mrs. Greene brought her concerns to her supervisors and submitted a note from her physician, she was relieved of the swimming pool assignment without penalty. In regard to the "system of fear and reprisal," State Defendants argue that "[t]he allegations are totally conclusory and ... there were no threats of reprisal witnessed by the plaintiff or made to [the] plaintiff." (*Id.*) According to State Defendants, Mr. Greene actually was allowed to take vacation time to go to Albany and lobby the Legislature, and his other accusations are based on rumor and rumor alone. Finally, State Defendants argue that the alleged adverse economic impact on the community from the Sunmount changes is a "speculative and premature" claim by plaintiffs because they have yet to suffer any adverse affects on themselves or their property.

Plaintiffs' claims against defendant Day are in her capacity as "Leader" of the Public Employees Federation Local 242 ("PEF 242"), (Pls' Comp. ¶ 21), the union of which Mr. Greene is a member. Plaintiffs' specific allegations against defendant Day appear to arise out of two incidents. The first event involves a promotion that Day is claimed to have been offered by defendant Hawes for running for an elected position in PEF 242. Apparently, Mr. Greene believes that defendant Day was on friendly terms with State Defendants and would not challenge their alleged decision to close Sunmount. The second incident involves the publication of a certain memorandum by defendant Day in conjunction with defendant Hawes and others. Plaintiffs assert that this memorandum establishes that Day and PEF 242 conspired with State Defendants because the document fails to note that the changes at Sunmount would violate both the contract between the state and PEF 242 and New York law.

Local Defendants include (1) Paul Maroun, a Franklin County Legislator who also assists the local State Senator with respect to the issue of changes at Sunmount and is a member of the Town of Altamount's Task Force on the changes at Sunmount ("Task Force"); (2) Dean Lefebvre, Supervisor of the Town of Altamont and Co–Chairman of the Task Force; and (3) Daniel McClelland, Co–Chairman of the Task Force, a member of Sunmount's "Communications Work Group," and owner and operator of a local newspaper, the Tupper Lake *Free Press.* The Task Force, made up of local residents, businessmen, and government officials, ostensibly was developed to lessen the impact any changes at Sunmount might have on the local economy.

With respect to Local Defendants, plaintiffs allege that defendant McClelland "violated [their] Right To Petition by telling the owner and another employee of one local business that [plaintiffs'] petition was not approved by the Task Force and it was therefore an 'illegal petition', which resulted in the petition being withdrawn from public access." (Pls' Comp. at ¶ 40.) Plaintiffs also claim that defendants Maroun and Lefebvre violated their rights by allegedly deceiving him with "fraudulent information ... about Sunmount's closure." (Id. at ¶ 45.) Finally, plaintiffs argue that defendants McClelland and Lefebvre have engaged in character assassination and further violation of plaintiffs' rights by failing to support the Action Group and speaking against the group and Mr. Greene's petitions.

Plaintiffs have raised eleven causes of action against individual defendants or combinations thereof, including claims of "endangerment of health and welfare," negligence, "suppression of investigation," "willful interference with family relations," intentional infliction of mental distress, misrepresentation, "deceit as fraud and silence as fraud," violation of plaintiffs' First Amendment rights, "character assassination," and statutory vagueness. Plaintiffs base jurisdiction for their claims on 42 U.S.C. §§ 1983 and 1985(3), 28 U.S.C. §§ 1331, 1343(1), 1367(a), 2201, and 2202, and "[t]he Plaintiffs' intrinsic human rights," (Pls' Comp. at ¶¶ 3–11).

Among the relief requested by plaintiffs is trial by jury, $1.4 million in compensatory damages, a court order directing defendants to return programs and services to plaintiff Patricia Donnelly and other children in the Tupper Lake public school system, and a declaratory judgment that the practices of defendants violated the constitutional and statutory rights of plaintiffs.

Each group of defendants now moves to have the Complaint dismissed as to them for failure to state a cause of action under Fed. R.Civ.P. 12(b)(6). Moreover, defendant Day and Local Defendants also move to have the Complaint dismissed for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1). Finally, defendant Day moves for dismissal based on improper service of process, Fed.R.Civ.P. 12(b)(5), and Local Defendants move for dismissal because plaintiffs lack standing to sue. Each group of defendants also argues that the Court should decline to exercise supplemental jurisdiction over any remaining state law claims once the federal claims are dismissed.

## III. DISCUSSION

When a party moves for dismissal both because a court lacks subject-matter jurisdiction and for failure to state a cause of action, the court typically should address the jurisdictional question first. In other words, the determination of whether the merits of a complaint are sufficiently substantial is a threshold question that must be addressed by a court before it can exercise jurisdiction and proceed to the legal determination under Rule 12(b)(6) of whether the complaint states a claim. *See Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). It may be impossible in a 42 U.S.C. § 1983 action, however, to determine the jurisdictional issue without essentially determining whether a plaintiff has stated a cause of action. As the Court will explain below, jurisdiction to adjudicate a Section 1983 action arises when a plaintiff demonstrates a violation of his rights under the Constitution or federal law. The Court consequently will be unable to avoid an application of the law pertinent to Rule 12(b)(6).

On a motion to dismiss under Rule 12(b)(6), the facts alleged by a plaintiff are assumed to be true and must be liberally construed in a light most favorable to the plaintiff. *Easton v. Sundram,* 947 F.2d 1011, 1014 (2d Cir.1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). In sum, a complaint should not be dismissed for failure to state a claim unless it appears, beyond doubt, that the plaintiff can prove no set of facts that would entitle him to relief. *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir. 1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). To determine whether plaintiffs here have stated a cause of action against defendants, the Court initially must determine the nature of the allegations required by the authority under which plaintiffs are suing.

*A. 42 U.S.C. § 1983*

Title 42 U.S.C. § 1983 serves as the basic vehicle for federal court review of alleged state and local violations of federal law. The statute creates a cause of action against any person who, acting under color of state law, abridges rights created by the Constitution and laws of the United States. Section 1983, despite plaintiffs' arguments to the contrary, "does not create federal court jurisdiction. Rather, it creates a cause of action, a legal entitlement to relief, against those who violate federal law while acting pursuant to state government authority." *Polite v. Casella,* 901 F.Supp. 90, 93 (N.D.N.Y.1995). Federal court jurisdiction to hear Section 1983 suits does exist, however, under the general federal question jurisdiction statute, 28 U.S.C. § 1331.

For a claim to survive under Section 1983, plaintiffs must satisfy two prerequisites. First, they must show "that they have been deprived of a right 'secured by the Constitution and the laws' of the United States." *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970)). Second, they must show that the defendants "deprived them of this right acting 'under color of any statute' of the State of New York." *Id.* In other

words, the conduct causing deprivation of the federal right must be "fairly attributable to the state." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). This requirement is satisfied by a showing that the party charged with the deprivation is a person who may fairly be said to be a state official or because his conduct is otherwise chargeable to the state. *See Scott v. Dixon,* 720 F.2d 1542, 1545 (11th Cir.1983), *cert. denied,* 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984). Even a private party, when acting pursuant to state law or in conjunction with state officials, may in certain circumstances incur liability under Section 1983. *Id.*

**1. Defendant Day**

Plaintiffs have expended considerable energy arguing that defendant Day was acting under color of state law, with some success. But after reviewing the Complaint, the Court finds that plaintiffs have failed to sufficiently allege that defendant Day has deprived them of a right secured by the Constitution and the laws of the United States. The Court agrees with defendant that the relevant claim that plaintiffs are attempting to assert is a claim for a breach of the duty of fair representation. Again, plaintiffs' criticisms of defendant Day are in her capacity as "Leader" of PEF 242, and the specific allegations against defendant arise out of incidents in which she failed, in plaintiffs' view, to adequately contest the decision to close Sunmount. The Seventh Cause of Action in the Complaint alleges that defendant Day "omitted the concern that downsizing towards closure of [Sunmount] would constitute a failure to comply with the Mental Hygiene Law." (Pls' Comp. at ¶ 106.)

Ordinarily, an action brought by an employee against a union for breach of the duty of fair representation "arises under" Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), and thus falls within original federal question jurisdiction under 28 U.S.C. § 1331. *Cf. City of Saginaw v. Service Employees Int'l Union, Local 446–M,* 720 F.2d 459, 461–462 (6th Cir.1983) (action brought by union against employer). Any such suit "is purely a crea-

ture of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of [Section] 301." *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 23, 103 S.Ct. 2841, 2854, 77 L.Ed.2d 420 (1983).

In this case, however, plaintiffs' suit cannot "arise under" Section 301 because the employer, a state government unit, is exempted specifically from the definition of "employer" for purposes of Section 301. *See* 29 U.S.C. § 152(2).[1] Where a state governmental employer is involved, federal jurisdiction over such a suit does not exist. *Ayres v. International Bhd. of Elec. Workers,* 666 F.2d 441, 443–44 (9th Cir.1982). Thus plaintiffs alleged federal claims against defendant Day must be dismissed for lack of subject-matter jurisdiction.

### 2. State Defendants

In regard to State Defendants, the Court has assumed the facts alleged by plaintiffs to be true and construed them liberally in a light most favorable to plaintiffs. The Court can glean only two possible federal causes of action against State Defendants from the unartfully pleaded document. The first potential claim appears to be one for a violation of due process in connection with the alleged endangerment by State Defendants of Mrs. Greene and her unborn child at the swimming pool. The second potential claim is slightly more comprehensible, and relates to plaintiffs' allegations that State Defendants violated their First Amendment rights by stifling their protest of the Sunmount closure. The record reveals, however, that plaintiffs can prove no set of facts that would entitle them to relief under either potential claim.

Any claim predicated on a violation of due process must involve the invasion and deprivation of a recognized life, liberty, or property interest. *See DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 195–96, 109 S.Ct. 998, 1002–04, 103 L.Ed.2d 249 (1989). Further-

more, State Defendants are correct that a due process claim must allege more than mere negligence on the part of a defendant. *Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986). Despite these requirements the Complaint contains three causes of action that appear to allege only negligent violations of plaintiffs' rights. Even more dispositive is the fact that, although plaintiffs also allege intentional endangerment by defendants, the evidence indicates that plaintiffs were in fact never actually endangered—Mrs. Greene was excused from supervising the allegedly assaultive class. The Court consequently is at a loss in determining exactly what type of life, liberty, or property interest may have been impinged here.

Turning to the potential First Amendment violations by State Defendants, the Court once again finds itself nonplussed by the Complaint. The Eighth Cause of Action in the Complaint, the only cause that refers to the First Amendment, reads in its entirety as follows:

*INTERFERENCE WITH FIRST AMENDMENT FREEDOM OF SPEECH RIGHTS, THE ATTEMPT TO BLOCK PLAINTIFF'S ABILITY TO TAKE DISPUTED ISSUES TO THE NYS LEGISLATURE*

109. Plaintiffs GREENEs [sic] incorporate by reference paragraph 51 here. Rep ipsa loquitur [sic].

[51. On February 1, 1994 [Mr. Greene] applied for the time off to present the disputed issues at the State Legislature, which met with resistance as Defendant NORTON attempted to block plaintiff's ability to take the time off (See Exhibit AF), but plaintiff's immediate supervisor ... *granted plaintiff approval for all requests* in spite of Defendant NORTON's order to the contrary.]

(Pls' Comp. at ¶ 109, 51 (emphasis added).) Thus plaintiffs admit that their ability to bring their disputes to the legislature was in fact *not* hindered by State Defendants, be-

---

1. The statute dictates that "[t]he term 'employer ... shall not include ... any State or political subdivision thereof." 29 U.S.C. § 152(2).

cause Mr. Greene's request for leave was granted. Moreover, to the extent that it could possibly support plaintiffs' allegations, Exhibit AF consists merely of a request by defendant Norton that Mr. Greene's supervisor "call me before responding" to Mr. Greene's application for time off.[2]

 While the Court recognizes that a Section 1983 claim "may not be held to a 'heightened pleading standard,'" a complaint must nevertheless contain "more than merely broad based conclusory statements." *Hall v. Dworkin,* 829 F.Supp. 1403, 1412 (N.D.N.Y. 1993). Only when the complaint sets forth *specific* allegations of facts that indicate a deprivation of constitutional rights will it be permitted to survive a motion to dismiss. *Spear v. West Hartford,* 954 F.2d 63, 68 (2d Cir.), *cert. denied,* 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992). In this case, the Court finds that neither the Eighth Cause of Action, nor any other part of the Complaint, satisfies the pleading requirements for Section 1983 claims in regard to possible First Amendment violations by State Defendants. To merely state in a conclusory fashion that rights have been violated—or that a conspiracy existed to violate them—is wholly insufficient, "and to allow such a lax pleading requirement would do violence to even the liberal language of [Fed.R.Civ.P.] 8(a)." *Hall,* 829 F.Supp. at 1413.

State Defendants have not moved to dismiss the Complaint for lack of subject-matter jurisdiction, so the Court assumes that it has jurisdiction as to those defendants. The Court has treated their motion as one to dismiss under Rule 12(b)(6), although as previously explained, the distinction in this case between a Rule 12(b)(1) analysis and a Rule 12(b)(6) analysis is more technical than substantive. In sum, plaintiffs alleged federal claims against State Defendants must be dismissed for failure to state a federal cause of action under Section 1983.

### 3. Local Defendants

 Local Defendants have moved for dismissal pursuant to Rule 12(b)(1). After reviewing the Complaint, the Court finds that plaintiffs have failed to allege any violations against Local Defendants that would confer Section 1983 jurisdiction. Again, the majority of plaintiffs' claims are for alleged violations of state law, such as defamation and intentional infliction of emotional distress. As an initial matter, the Court was unable to determine exactly how defendant Maroun may have impinged plaintiffs' federal rights, since he does not appear to be mentioned in any of the relevant causes of action. Only the Ninth Cause of Action, which alleges "Interference with First Amendment Rights" by defendants McClelland and Lefebvre, arguably relates to a Constitutional or federal law violation by any of the Local Defendants. From the Court's perspective, however, even that cause of action consists again of "merely broad based conclusory statements" that fail to satisfy the requirements of Rule 8(a). See *Hall,* 829 F.Supp. at 1412.

Assuming the facts as stated by plaintiffs to be true, plaintiffs' claims of "serious" Constitutional violations appear to involve occasions in which Local Defendants merely disagreed, albeit publicly, with plaintiffs' positions on the closure of Sunmount. For example, the Ninth Cause of Action alleges that defendants McClelland and Lefebvre interfered with plaintiffs' "Freedoms of Speech and Expression in the petitioning process, by implying to the general public that there was something wrong about our group and its actions to petition government for redress." (Pls' Comp. at ¶ 110.) In a paragraph incorporated by reference into the Ninth Cause of Action, plaintiffs further argue that defendants McClelland and Lefebvre violated their First Amendment rights by announcing that "[a]s well intentioned as [Mr. Greene] might have been, we see [his petitions] as very dangerous at this point." (*Id.* at ¶ 48.) Finally, defendants McClelland and Lefebvre apparently had the audacity to announce that "[w]e're hoping the union officials can come together, be-

---

2. In their opposition to defendants' motion to dismiss, plaintiffs have attempted to submit additional evidence that defendant Norton did not want to give Mr. Greene time off to lobby. Even assuming such evidence is material, because Mr. Greene was granted the vacation, it cannot be considered on these motions to dismiss the Complaint in its present form.

cause for different employees' groups to be going off in different directions could be disastrous for Tupper Lake!" (*Id.* at ¶ 49.)

The "substantiality doctrine," invoked by Local Defendants, certainly seems to apply to this case. The doctrine requires the Court "[to] dismiss a complaint seeking recovery under the Constitution or laws of the United States if the alleged federal claim either 'clearly appears to be immaterial and solely made for the purpose of obtaining jurisdiction' or *where such a claim is wholly insubstantial and frivolous.*" *Hotel Syracuse, Inc. v. Young*, 805 F.Supp. 1073, 1081 (N.D.N.Y.1992) (quoting *Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1180 (7th Cir. 1989)) (emphasis added). Here, plaintiffs argue that Local Defendants violated their First Amendment rights essentially because they disagreed with plaintiffs and stated as much. The Court believes that, based on the facts as alleged by plaintiffs, such claims arguably qualify as "wholly insubstantial and frivolous" and fail to confer subject-matter jurisdiction for purposes of a Section 1983 claim.

### B. 42 U.S.C. § 1985(3)

■ In order to state a claim under 42 U.S.C. § 1985(3), plaintiffs must allege at the very least that defendants engaged in (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a member of a class is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *See Gray v. Town of Darien*, 927 F.2d 69, 73 (2d Cir.), *cert. denied*, 502 U.S. 856, 112 S.Ct. 170, 116 L.Ed.2d 133 (1991); *Trautz v. Weisman*, 809 F.Supp. 239, 248 (S.D.N.Y.1992).

■ Furthermore, as held by the Second Circuit, "an action will lie under [Section] 1985(3) [only] when a plaintiff is injured by a private conspiracy to interfere with his constitutional rights, so long as there is 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Jews for Jesus, Inc.*

*v. Jewish Community Relations Council of New York, Inc.*, 968 F.2d 286, 290–91 (2d Cir.1992) (quoting *Colombrito v. Kelly*, 764 F.2d 122, 130 (2d Cir.1985)). The Supreme Court added the "class-based animus" requirement "in order to prevent [Section] 1985(3) from being broadly—and erroneously—interpreted as providing a federal remedy for all 'tortious, conspiratorial interferences with the rights of others.'" *Jews for Jesus*, 968 F.2d at 291.

■ After reviewing the Complaint in this case, the Court finds that, even assuming the facts unartfully alleged are true, plaintiffs would not be entitled to relief from any of the defendants pursuant to Section 1985(3). In fact, the Court believes that the circumstances at issue here are precisely the type of circumstances that the Supreme Court has expressly excluded from Section 1985(3) coverage—in other words, *non-federal* conspiratorial interferences with the rights of others. *See id.* Plaintiffs simply have not come close to alleging the type of class-based discriminatory animus required by *Jews for Jesus* and similar cases in order to raise a federal question.

While it is possible that a group such as the disabled clients of Sunmount could constitute a class under Section 1985(3), plaintiffs have not alleged that the constitutional rights of the clients have been violated. The only constitutional violations at issue here revolve around alleged attacks on plaintiffs' First Amendment rights, and plaintiffs' rights alone. Plaintiffs cannot seriously contend that their family represents a "class" that is subject to invidious discrimination in regard to its collective First Amendment rights. In other words, no evidence has been presented indicating that defendants conspired to discriminate against the Greenes *qua* "Greenes."

Without alleging any facts to support the argument that plaintiffs are subject to class-based discrimination, the Complaint is deficient as to plaintiffs' Section 1985(3) claims. Plaintiffs can prove no set of facts that would entitle them to relief under the statute, which is required to survive a Rule 12(b)(6) motion. Because of this deficiency, plaintiffs' Section

1985(3) claims against any and all defendants fail, to the extent they were pleaded in the first place, and the Court need not address whether a conspiracy existed or whether defendants' motive was indeed discriminatory. Moreover, with no federal basis to retain defendants, the Court also declines to exercise supplemental jurisdiction over any state law claims plaintiffs may have against them.

## IV. CONCLUSION

For all the foregoing reasons, Defendants' motions to dismiss the Complaint for lack of subject-matter jurisdiction or for failure to state a cause of action are GRANTED and the Complaint is hereby DISMISSED in its entirety. This dismissal is without prejudice, however, and plaintiffs may amend the Complaint pursuant to Fed.R.Civ.P. 15(a) within forty-five (45) days of the filing of this Order.

**IT IS SO ORDERED.**