**Wendy LINDER, Plaintiff,**

v.

**THE CITY OF NEW YORK, et. al. Defendants.**

**No. 01 CV 8245 ILG.**

United States District Court, E.D. New York.

March 13, 2003.

David Craig Nevins, Leeds, Morelli & Brown, Carle Place, NY, for Wendy Lindner.

Jane R. Goldberg, Office of the Corporation Counsel, New York, NY, for City of New York, New York City Dept. of Educ.

George Shebitz, Shebitz Berman & Cohen, Inc., New York, NY, for Brian Dalton.

*MEMORANDUM & ORDER*

GLASSER, District Judge.

## FACTS

Plaintiff was a teacher at a New York City public school. On December 18, 2000, she was attending a school-sponsored party held at a local establishment when fellow teacher Brian Dalton ("Dalton") emerged from the women's restroom and collided with her. Compl. ¶ 12. He wrapped his arms around her, ignoring her requests to be let go, and said to her "I want you, I want you now, fuck my girlfriend, I want you." Compl. ¶ 13. Two other women rushed out of the women's restroom at about the same time, shouting that Dalton had followed them in to the restroom and thrown one of them into a bathroom stall. Compl. ¶ 14. Dalton continued his sexually suggestive comments and off-color language while grabbing plaintiff by the hair and throat. He touched her breast and then pressed his face into her pelvis, saying he wanted to have oral sex with her. He rubbed his fingers, through her clothes, into her vagina and anus, and then pulled the front of her shirt off. Compl. ¶ 15. Plaintiff was finally able to escape when a coworker pulled Dalton off of her. Compl. ¶ 16.

The next day, plaintiff filed a complaint with the school, and informed the school's principal, Steven Callari ("Callari") of the incident. Callari told her that two other women had complained about Dalton's behavior the night before, and that Dalton would be disciplined and removed from the school. Compl. ¶ 18. Callari also informed the school's superintendent, Matthew Bromme ("Bromme"), of the incident. Compl. ¶ 19.

The following day, plaintiff called Callari before school to tell him that she intended to file a police report of the incident. Callari responded angrily, saying that he had thought she was not going to file a police report and instead keep the matter within the school. Compl. ¶ 20.

Around January, 2001, the School's Office of Equal Opportunity investigated plaintiff's complaint. That investigation resulted in a finding, dated January 21, that Dalton had sexually assaulted the plaintiff. Compl. ¶ 21. Nevertheless, Dalton resumed his teaching position at the school just a short time later. Compl. ¶ 22. About that same time, Callari told plaintiff that the two other women who had complained about Dalton's behavior that night had withdrawn their complaints. Shortly thereafter, both women were promoted. Compl. ¶ 23. Plaintiff, meanwhile, found herself ostracized by her colleagues. Compl. ¶ 24. She was written up for minor infractions of rules which were not being enforced against the women who had withdrawn their complaints. Compl. ¶ 25. The school refused to pay her medical expenses incurred as a result of the incident with Dalton. Compl. ¶ 26. She was transferred from a class where she was teaching gifted children to one comprised of children in the lower percentages of the grade. Compl. ¶ 27. Around June of that

year, plaintiff was informed that her assigned classroom was to be changed from one in the main school building to one in the satellite school building, in an area close to where Dalton worked when not teaching. Compl. ¶ 28. Plaintiff complained about her treatment to the school's assistant principal, Dino Biannconotti ("Biannconotti"), who told her that he would speak to Callari, and not to worry. Compl. ¶ 30.

The day after making this complaint, the plaintiff was notified by Callari that she was scheduled for a disciplinary hearing. She again complained to Biannconotti, who again informed her that he would speak to Callari. Compl. ¶ 31. When she attended this hearing, she was shown a letter purportedly from Biannconotti, claiming that she had threatened him with going to the press and having Dalton arrested. Compl. ¶ 32.

By August of that year, plaintiff decided that her working conditions were intolerable, and tendered her resignation. Compl. ¶ 33. The following month. Dalton was promoted to the position of guidance counselor. Compl. ¶ 34.

## PROCEDURAL POSTURE

Prior to filing this complaint, plaintiff filed a charge of discrimination with the EEOC on either November 8 or November 18, 2001.[1] In December of 2001, plaintiff brought this action alleging assault and battery against Dalton, and violations of 42 U.S.C. §§ 1981, 1983, 1985 and 1986 and the Equal Protection Clause as well as a claim for negligent retention against the other defendants. She named as defendants New York City, The NYC Board of Education, Bromme, Callari, Biannconotti (collectively the "individual defendants")

and Dalton. All defendants (absent Dalton) moved to dismiss the complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6). On May 21, 2002, plaintiff received a right-to sue letter from the EEOC. Plaintiff now moves for leave to amend the complaint under Fed.R.Civ.P. 15(a), to include claims under Title VII, 42 U.S.C. §§ 2000e *et seq.*, Title IX, 20 U.S.C. §§ 1681 *et seq.*, New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* and N.Y.C. Admin. Code Title 8–101 *et seq.* For the following reasons, some of the motions to dismiss are granted, while others are denied, and the motion to amend is granted in part.

## DISCUSSION

*Motion to dismiss*

### 1. Standard of Review

On a Rule 12(b)(6) motion, the Court must accept as true the factual allegations of the complaint, and view the complaint in the light most favorable to the non-moving party. *Bolt Elec. Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir.1995). Dismissal is warranted only if "it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Walker v. City of N.Y.*, 974 F.2d 293, 298 (2d Cir.1992) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### 2. Plaintiff's claims against the City of New York

■ These claims must be dismissed, since the Board of Education is an entity separate from the City itself, *see, e.g.*, *Campbell v. City of New York*, 203 A.D.2d 504, 611 N.Y.S.2d 248, 249 (2d Dept.1994), and the City is not liable for torts committed by that Board. *Titusville Iron Co. v.*

---

**1.** Though the parties disagree on the date, and there is no independent evidence in the record to establish it, the difference does not affect the disposition of this motion.

*City of New York,* 207 N.Y. 203, 100 N.E. 806 (1912). Plaintiff does not dispute this point in her memorandum of law.

### 3. Plaintiff's § 1981 claims

■ These claims must be dismissed, since this statute applies only to allegations of *racial* discrimination, and plaintiff does not allege that she is a member of a racial minority. Plaintiff does not dispute this point in her memorandum of law either.

### 4. Plaintiff's § 1985 and § 1986 claims

■ 42 U.S.C. § 1985 prohibits two or more people from conspiring to interfere with the exercise of another's civil rights based on a discriminatory animus. *See Greene v. Hawes,* 913 F.Supp. 136, 143 (N.D.N.Y.1996). Conspiracy is an essential element of such a claim. *Id.* Here, however, the remaining parties are the Board of Education and several of its employees, all members of a single entity. Plaintiff's claims are therefore barred by the intra-corporate (or intraenterprise) conspiracy doctrine, according to which members of a single entity cannot be found to have conspired together with such entity or with each other in their capacity as members of the entity. *See, e.g., Herrmann v. Moore,* 576 F.2d 453, 459 (2d Cir.1978). The defendants cannot, as a matter of law, be found to have conspired together.

The failure of this claim also requires dismissal of plaintiff's section 1986 claim, since a prerequisite for such a claim is a valid claim under section 1985. *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 7 F.3d 1085, 1088 (2d Cir.1993).

### 5. Plaintiff's negligent retention claim

■ Under the New York law of negligent retention, an employer has a duty to use reasonable care and refrain from knowingly retaining a person with known dangerous propensities. *Haddock v. City of New York,* 140 A.D.2d 91, 532 N.Y.S.2d 379, 380 (1988), *aff'd* 75 N.Y.2d 478, 554 N.Y.S.2d 439, 553 N.E.2d 987 (1990). A necessary element of such a claim is that the employer knew or should have known of the employee's propensity for the conduct that caused the injury. *Brannon v. Tarlov,* 986 F.Supp. 146, 150 (E.D.N.Y. 1997). Here, the complaint asserts, albeit on information and belief, that similar incidents of inappropriate conduct of a sexual nature by Dalton had been reported to the school prior to the assault on plaintiff. Compl. ¶ 18. It is therefore arguable that the Board of Education failed to use reasonable care in knowingly retaining Dalton, and the complaint states a claim for negligent retention. Further, despite case law to the contrary, *see Torres v. Pisano,* 116 F.3d 625, 640 (2d Cir.1997), this Court is of the view that the New York Worker's Compensation Law does not bar such a claim, *see Chen v. Street Beat Sportswear, Inc.,* 226 F.Supp.2d 355 (E.D.N.Y.2002).

### 6. Plaintiff's § 1983 claim

There are two elements necessary to state a claim under 42 U.S.C. § 1983. The first is that plaintiff has been deprived of a federally protected right, and the second is that such deprivation was committed under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

#### (a) Federally protected right

##### i) First Amendment

■ To the extent that the allegations in the complaint can be construed to suggest that plaintiff was punished for the exercise of her First Amendment rights, this claim must fail. The facts pleaded in the complaint do not support a finding that

the speech in question (her complaints) was on a matter of public concern, which the First Amendment would protect. *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Blum v. Schlegel,* 18 F.3d 1005, 1010 (2d Cir.1994). Even allowing that these complaints may have touched on a matter of public concern—e.g., that Dalton was a menace to others—the fact that they were intended to redress a personal grievance, *see Lewis v. Cowen,* 165 F.3d 154, 163–64 (2d Cir.1999), and that her motives were private and personal, *see Blum v. Schlegel,* 18 F.3d 1005, 1012 (2d Cir.1994), put them beyond the scope of that Amendment's protections.

### ii) Equal Protection

 The complaint also alleges a violation of plaintiff's 14th Amendment right to equal protection ˙ by discriminating against her on the basis of gender and retaliating against her for complaining about this discrimination. To establish a violation of Equal Protection based on disparate treatment of men and women, plaintiff must show, *inter alia,* that she was selectively treated based upon her gender. *Diesel v. Town of Lewisboro,* 232 F.3d 92, 103 (2d Cir.2000). The complaint does not support such a claim. Plaintiff does allege that she was treated differently from Dalton and the two other teachers who had withdrawn complaints against him (all of whom were promoted while plaintiff was not), but since two out of the three were female, this allegation fails to support a finding that this discrimination was based on her gender. Indeed, plaintiff does not even allege conclusorily that the school's actions against her were motivated by her gender.

 A claim of gender-based discrimination may also, however, be premised upon the existence of a "hostile work environment." *See Saulpaugh v. Monroe Comm. Hosp.,* 4 F.3d 134, 143–44 (2d Cir. 1993). To establish such a claim under section 1983, plaintiff must show that 1) she was intentionally harassed, 2) the harassment was based on her sex, 3) such actions were taken under color of state law, and 4) the harassment was so severe as to render the work environment hostile to her. *Cohen v. Litt,* 906 F.Supp. 957, 964 (S.D.N.Y.1995). The allegations setting out Dalton's attack on her satisfy the first two elements on their face. *See Stoneking v. Bradford Area School District,* 667 F.Supp. 1088, 1095 (W.D.Pa.1987), *rev'd on other grounds, Smith v. Stoneking,* 489 U.S. 1062, 109 S.Ct. 1333, 103 L.Ed.2d 804 (1989). For reasons discussed in subsection (b) below, plaintiff has also sufficiently pleaded the third element. Plaintiff's highest hurdle is satisfying the fourth element's requirement of severity.

 While a single incident would usually fail to support such a finding, the court must consider the totality of the circumstances. *Cruz v. Coach,* 202 F.3d 560, 572 (2d Cir.2000); *Richardson v. N.Y.S. Dept. of Corr. Serv.,* 180 F.3d 426, 437 (2d Cir.1999); *see also Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 768 (2d Cir.1998) ("where the conduct is particularly severe ... *'[e]ven a single incident of sexual assault* sufficiently alters the conditions of the victim's employment and clearly creates an abusive environment ...." (quoting *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 (2d Cir.1995) (emphasis supplied by *Quinn* ).)) Here, the alleged incident—committed at a school-sponsored function—was particularly severe, going beyond mere words to highly offensive physical contact. *See Cohen,* 906 F.Supp. at 964 (dismissing harassment claim, in part, because the incident alleged consisted only of verbal behavior, not a physical assault). When plaintiff complained to her

superiors, she was allegedly retaliated against by being cited for numerous small violations of school regulations and moved from a class where she taught gifted children to one in which she taught those in the lower percentages of the grades. Meanwhile, despite having been found guilty by the school of sexual harassment, Dalton returned to work and was in fact promoted fairly soon thereafter. In contrast, plaintiff was ostracized by the other teachers, allegedly with the encouragement of the individual defendants. No steps were taken to assure plaintiff that she would be protected from a subsequent similar assault; in fact, plaintiff's newly-assigned classroom placed her even closer to Dalton.

These facts, taken all together, make out a claim of an equal protection violation based upon a hostile work environment, at least well enough to withstand a motion to dismiss.

(b) Color of state law

■ An individual acts under color of state law when he exercises power possessed by virtue of state law, and made possible only because the wrongdoer was clothed with the authority of that law. See, e.g., *Church of Human Potential v. Vorsky*, 636 F.Supp. 93 (D.N.J.1986). Here, the individual defendants were plainly acting within their official capacities as supervisory members of a municipal corporation established by state law, and therefore under color of state law. *See Stoneking*, 667 F.Supp. at 1096–97; *Stoneking v. Bradford Area School District*, 882 F.2d 720, 731 (3d Cir.1989).

(c) Liability of a municipal entity

■ A municipal corporation such as the Board of Education is liable under section 1983 only where it itself commits a wrong; there is no vicarious liability for a

section 1983 claim. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Ellis v. Blum*, 643 F.2d 68, 85 (2d Cir.1981). To support liability on the part of a municipal entity, plaintiff must show that the deprivation of her rights was caused by the existence of a policy or practice of that entity. *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The complaint fails to plead any facts to support such a claim, its allegations on this point being wholly conclusory. *See Woo v. City of New York*, 1996 WL 457337, *4–5 (S.D.N.Y)1996 U.S. Dist. LEXIS 11689, *14–15. The section 1983 claim against the Board must therefore be dismissed.

*Motion for leave to amend*

■ Although F.R.Civ.P. 15(a) provides that leave to amend "shall be freely given when justice so requires," leave need not be granted when such amendment would be futile, in that the additional claims would be subject to dismissal under F.R.Civ.P. 12(b)(6). *Islamic Soc. of Fire Personnel v. City of New York*, 205 F.Supp.2d 75 (E.D.N.Y.). In order to rule on this motion, it is therefore necessary to consider whether the claims plaintiff seeks to add by amendment would survive such a motion to dismiss.

1. *Title VII*

■ As with a section 1983 claim, a violation of Title VII may be premised upon the existence of a hostile work environment. *See Carrero v. N.Y.C. Housing Auth.*, 890 F.2d 569 (2d Cir.1989). To establish such a claim, plaintiff must show that 1) she is a member of a protected class, 2) she was subject to unwelcome sexual harassment, 3) the harassment was

based on sex, and 4) the harassment was sufficiently severe or pervasive as to affect a term, condition or privilege of her employment. *Schoffstall v. Henderson,* 223 F.3d 818, 826 (8th Cir.2000).

■ Similarly to plaintiff's section 1983 claim, the first three elements are plainly met here, and only the fourth is somewhat problematic. Plaintiff need not, however, ·allege economic injury; it is enough to show that the harassment was "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.' " *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (quoting *Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir.1982)).

■ Factors to be considered are the frequency of the discriminatory conduct, its severity, whether it is physically threatening and humiliating or merely offensive speech, and whether it unreasonably interferes with the employee's work performance. *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Here, although the conduct was not frequent, it was severe, and included a physically threatening and humiliating assault. *See Howley v. Town of Stratford,* 217 F.3d 141, 154 (2d Cir.2000) (isolated incident of verbal harassment sufficient to support claim of hostile work environment); *Becker v. Ulster County,* 167 F.Supp.2d 549, 555 (N.D.N.Y.2001) (single sexual assault altered the employee's work environment); *Cf. Cohen,* 906 F.Supp. at 965 (single incident would have been sufficient if it involved physical contact or coercion). A reasonable finder of fact might also conclude that having to work so close to her attacker unreasonably interfered with her work performance. For all of the above reasons, plaintiff's proposed amended complaint successfully pleads a claim under Title VII.

■ Defendants argue that plaintiff's Title VII claim is untimely as to the alleged assault, because she failed to file her EEOC complaint within 300 days of the incident, as required by 42 U.S.C. § 2000e–5(e)(1). This argument must be rejected. In a recent Supreme Court decision. *Nat'l Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Court found that hostile environment claims are different from other discrimination claims, in that they are based not on discrete acts, but the cumulative effect of many individual acts. *Id.* at 2073. The Court stated that for such a claim "[i]t does not matter, for purposes of [42 U.S.C. § 2000e–5(e)(1) ], that some of the component acts of the hostile working environment fall outside the statutory time period," and held that "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining liability." *Id.* at 2074. Here, the alleged acts of retaliation, Dalton's return to school, and the decision to move plaintiff closer to Dalton all make up part of the "hostile work environment" that plaintiff alleges, and occurred within 300 days of the date on which plaintiff filed her EEOC complaint. Plaintiff's Title VII claim is therefore timely, and the court may take into account the alleged assault.

■ In contrast to section 1983, though, Title VII does not create individual liability for violations of its terms. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313–17 (2d Cir.1995). Only the employer may be held liable, and is in fact held vicariously liable for a hostile work environment created by a supervisor with immediate or successively higher authority over the victimized employee. *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct.

2257, 141 L.Ed.2d 633 (1998); *Faragher v. Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Leave to amend to complaint to add Title VII claims against the individual defendants must therefore be denied, but such claims may be added as against the Board.

### 2. *Title IX, New York State Human Rights Law, and New York City Administrative Code*

Courts in this circuit have repeatedly stated that the standards for evaluating discrimination claims under Title IX, The New York State Human Rights Law, and the New York City Administrative Code are virtually identical to those used to evaluate such claims under Title VII. *See, e.g., Weinstock v. Columbia University,* 224 F.3d 33, 42 n. 1 (2d cir.2000); *Torres v. Pisano,* 116 F.3d 625, 629 n. 1 (2d Cir. 1997); *Murray v. New York Univ. College of Dentistry,* 57 F.3d 243, 248 (2d Cir. 1995). Therefore, since the court finds that plaintiff's proposed amended complaint successfully pleads a cause of action under Title VII, it successfully pleads her claims under those provisions as well.[2] The Title IX claims, however, may only be maintained against the Board—there is no individual liability for sexual discrimination under Title IX. *Norris v. Norwalk Pub. Schools,* 124 F.Supp.2d, 791, 794–98 (D.Conn.2000).

■■■ Defendants argue that plaintiff's claims under State and City law are barred by section 3813(1) of the New York State Education Law. This law requires, as a condition precedent to bringing certain actions involving schools and school districts, that a notice of claim be presented to the governing body of such school or district within 90 days from the date when the claim accrued. A claim accrues under this section when damages become ascertainable; in an action for sexual discrimination leading to discharge, that date is the date of the employee's discharge. *Hoger v. Thomann,* 189 A.D.2d 1048, 1049–50, 592 N.Y.S.2d 887 (3d Dept.1993). Here, plaintiff filed her notice of claim on November 8, 2001. The complaint and the proposed amended complaint allege, in substance, that plaintiff was constructively dismissed in August of that year; no specific date in August is given. Plaintiff seeks, through her moving papers, to add an allegation to the amended complaint to the effect that plaintiff tendered her resignation "as of September 1," but it is on the date on which plaintiff actually tendered her resignation, not the date on which she would stop working, that her damages became ascertainable and the limitations period began to run. *See Flaherty v. Metromail Corp.,* 235 F.3d 133, 138 (2d Cir. 2000); *Adames v. Mitsubishi Bank Ltd.,* 751 F.Supp. 1565, 1570 (E.D.N.Y.1990). That date is not specifically pleaded. The court could dismiss the claim, subject to repleading in the amended complaint, but that is unnecessary here. Section 3813(2) permits the court to grant an extension of the time to file a notice of claim. That section provides that, in determining whether to grant an extension, the court is to consider, "in particular," whether the defendant had actual notice of the essential facts constituting the claim within the 90–day window *"or within a reasonable time thereafter."* (emphasis supplied). Here, even had the plaintiff tendered her resignation on August 1, the notice would have

---

**2.** The court notes that the Title IX claim is technically insufficient because it is not accompanied by an allegation that the school receives federal funds. See *Zangrillo v. Fashion Inst. of Tech.,* 601 F.Supp. 1346 (S.D.N.Y.), *aff'd mem.* 788 F.2d 2 (2d Cir. 1985). Plaintiff may correct this defect in the amended complaint, if such an allegation may be pleaded in good faith.

been no more than 9 days late. The court therefore finds that even if the notice was in fact untimely, defendants had actual knowledge of the claim within a reasonable time after the 90 days expired, and, if needed, grants plaintiff's request to extend the time to serve the notice to encompass the day it was filed.

### 3. *Disposition of motion for leave to amend*

Since the claims that plaintiff seeks to add by amendment would not be futile, there is little basis on which to deny the motion to amend. Amending the complaint at this early stage of the litigation does not substantially prejudice defendants, and plaintiff's reason for adding such claims at this time—that she just obtained a "right-to-sue" letter from the EEOC—is entirely reasonable. The court therefore grants the motion to amend, with the exception of the claims under Title VII and Title IX sought to be added against the individual defendants.

### CONCLUSION

Defendants' motion to dismiss is granted as to the claims under 42 U.S.C. §§ 1981, 1985 & 1986 and the claims against the City of New York. The motion to dismiss the claims under 42 U.S.C. § 1983 is granted with respect to the Board, but denied as to the individual defendants. The motion to dismiss the claim of negligent retention is denied.

Plaintiff is granted leave to amend the complaint to add claims under Title VII, Title IX, the New York State Human Rights law, and the New York City Administrative Code, but the Title VII and IX claims are barred as against the individual defendants. The court also holds that the new claims pleaded in the amended complaint are sufficient to state a claim under F.R.Civ.P. 12(b)(6) (assuming that

the Title IX claim can be successfully re-pleaded as discussed in n. 1 above), and are not time-barred.

SO ORDERED.